Grant B. Shipley v. Commissioner.
Shipley v. Commissioner
Docket No. 29339.
United States Tax Court
1951 Tax Ct. Memo LEXIS 100; 10 T.C.M. (CCH) 863; T.C.M. (RIA) 51270; September 18, 1951
*100 Sidney B. Gambill, Esq., for the petitioner. Kalman A. Goldring, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner contests respondent's determination of a deficiency of $6,538.33 in income tax for 1945. One adjustment is not contested. The issue is whether petitioner is entitled to a deductible capital loss either by reason of a stock transaction during the taxable year, or, in the alternative, by reason of a capital loss carryover resulting from the fact of the worthlessness of the stock in question in an earlier year. Findings of Fact Petitioner, a resident of Pittsburgh, Pennsylvania, filed his return for 1945, on the cash method of accounting, with the collector of internal revenue for the twenty-third district of Pennsylvania. Petitioner was born in 1880. He has worked as a machinist, draftsman, and engineer, and has held positions with several industrial concerns. Among other activities, he has designed machinery, equipment, and plants for mining, has engaged in the valuation of mineral deposits, and participated in the organization of a company to manufacture glass foundry sand. He has organized and been *101 an officer in various manufacturing companies, and is chairman of the board of the Elliott Company, which operates four manufacturing plants. He is also engaged by the International Nickel Company and is a consultant to the Koppers Company, Inc. Since 1911 he has maintained a consulting engineering office, specializing in designing mining plants. American Minerals Corporation, hereinafter called the Corporation, is a Virginia corporation organized in 1935 with 4,005 outstanding shares of no par common stock which were carried on its books at $10 per share. The principal asset held by the Corporation has been a mineral lease, acquired from the United States, on 3,813 acres of land located near Goshen, Virginia, and situated approximately 3,000 feet from the main line of the Chesapeake and Ohio Railroad. The property contains minerals such as limestone, marble, and silica sand, the latter being suitable for the manufacture of glass and foundry sand. Prior to December 19, 1939, John B. Catlett owned 2,200 shares in the Corporation. Petitioner had previously loaned $25,000 in cash to Catlett on the latter's notes. Catlett had put up his stock in the Corporation as collateral, petitioner *102 having examined and had a survey made of the Corporation's property. Subsequently Catlett failed to make repayment. On the above date the stock was formally transferred to petitioner. At the time of acquisition of the stock petitioner believed that the construction of a plant on the property for the production of sand would result in a profitable enterprise. The plant would cost about $300,000. Subsequently the cost of material and labor increased during the war, and in 1944 petitioner estimated that an investment of $500,000 would be required. In 1945 petitioner concluded that such an investment would be unwise in view of business conditions. At various times between 1939 and 1945 petitioner offered Catlett the opportunity to redeem the stock in return for repayment of the loan. In 1944 petitioner offered to sell the stock to Catlett for twenty cents on the dollar. At one time during that year Catlett requested petitioner to hold the stock, stating that another party might be interested on those terms, but no transaction was consummated. With the exception of these developments and of the events leading to the transaction in controversy petitioner never solicited or received offers *103 and never negotiated for the sale of the stock. On December 14, 1945, in order to take a loss for tax purposes, petitioner sold the stock to the brokerage concern of Thompson & Taylor for $1.00 plus stamp tax. The Corporation's balance sheets as of December 31, for the years 1939 to 1945, inclusive, show the following: Total assets on the books on those dates varied from $40,512.26 to $40,547.56 and consisted of cash and deferred charges in varying amounts, plus the Corporation's interest in the above-described property which was called "Mineral Rights" and which was carried at a fixed value of $40,000. The capital stock account on each of those dates was carried at $40,050. Total liabilities varied from $981.18 to $1,916.13, and earned surplus deficits ranged from $483.62 to $1,453.87. Petitioner's 1943 tax return reported a long-term capital loss of $61.25. His 1944 return reported a long-term capital loss of $87.50. Petitioner's 1945 tax return reported adjusted gross income of $123,971.47, consisting of income from salaries totaling $52,599.96, income from dividends and interest of $9,293.40, income from an annuity of $5,531.28, net loss from business as an engineer of $4,248.99, *104 income from a trust of $8,369.75, and net gain from the sale or exchange of capital assets of $52,426.07, computation of the latter amount taking into account a long-term capital loss of $12,499.50 resulting from an asserted loss of $24,999 on the sale of the Corporation's stock. Respondent's notice of deficiency disallowed the loss on the stock transaction, stating that: "It is determined that the amount of $12,499.50, claimed by you * * * is not allowable, as a deduction." The petition alleged that respondent erred in making that disallowance. The corporation's stock had as great a fair market value, if any, in 1945 as in any year after 1939. Opinion The sale by petitioner of his stock in American Minerals Corporation for the nominal amount of $1 for 2,200 shares would not entitle him to a deductible loss in the instant year 1945 when the sale took place, if the stock had already become worthless in a prior year. , affirmed (C.A. 8), , certiorari denied, ; , affirmed (C.A. 8), . From 1939, the date of its acquisition, *105 until the year of sale, we have no evidence of the value of the stock to sustain petitioner's burden of proof. The books of the corporation which show the net assets to have been virtually unchanged during that period are of no probative value in the light, on the one hand, of the testimony that the stock was worth $25,000 in 1939, and, on the other, that it was apparently worthless in 1945. ; cf. . Even if we assume with petitioner that a worthlessness in 1943 or 1944 would entitle him on this record to a loss carry-over to some extent, there is no greater proof that the worthlessness occurred in either of those years than as to the instant year, on the one hand, or the years 1940, 1941, or 1942, on the other. It necessarily follows that on this record, even if the stock had value in 1939, it could as well have become worthless in the period 1940 through 1942. If so, petitioner would be entitled to no deduction. His burden has accordingly not been met. Decision will be entered for the respondent.